## THE CASSANDRA ADAMS.

### TEBO and others *v.* THE CASSANDRA ADAMS, etc.

*(District Court, E. D. New York. March 14, 1887.)*

SALVAGE—VESSEL ASHORE—IMPENDING GALE—RESCUE BY TUG.

 The bark Cassandra Adams, loaded with ore, went ashore on the Romer shoal, off New York harbor, two hours before high water, Friday afternoon, and was unable to clear herself. She hired a pilot-boat to fetch her a tug. Thereafter, the tug B. coming to her, she agreed to pay the tug $500 if unsuccessful, and $800 if successful, in getting her off the shoal. Meantime the pilot-boat had found and sent the tug H. to the bark about 11 o'clock that night, and on the following morning the two tugs got the bark off the shoal. She could only have been taken off at high water. The next high water after she was taken off was Saturday night. During Saturday the worst storm of the season was brewing. If the bark had not been rescued Saturday morning, she would probably have been entirely lost, or would had to pay a heavy salvage to a tug taking her off in the gale. It was doubtful if the tug B. could have saved her alone, or if another tug would have come to her assistance in time. The bark and cargo were worth $200,000. The tug H. was worth $26,000. She was in no danger, nor called on for extraordinary skill or unusual exertion. *Held,* that she should recover $3,500 as salvage.

In Admiralty.

*Butler, Stillman & Hubbard,* for libelants.

*Owen & Gray,* for claimant.

BENEDICT, J. This is an action to recover salvage of the bark Cassandra Adams, her cargo and freight. This vessel was rescued from the place where she had grounded, upon the Romer shoal, off the harbor of New York. Her draught was 19 feet 9 inches forward, and 20 feet aft. She went ashore two hours before high water, on Friday afternoon,

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

February 13th. At high water she was aground her full length. Her cargo consisted of 300 tons of ore in her hold. Although she grounded two hours before high water, she was unable, in the two hours that remained before the tide commenced to fall, to relieve herself. It is evident, therefore, that she could not break herself clear by means of her sails and her anchor. Assistance was a necessity. This she realized, for she paid $300 to a pilot-boat which at her request went to find a tug to come to her relief. After the pilot-boat had gone, the tug Baltic came to her, and bargained with her that she should attempt to get her off at high tide for the sum of $500 if she was unsuccessful, and $800 if successful.

The weather was cold. The bay was full of heavy ice, in which the pilot-boat sent to bring aid was caught. When so caught, the Haviland, a steam-tug having on board a party of pleasure seekers bound to a ball on Sandy Hook, came to her, and was informed of the situation of the Cassandra Adams; whereupon she landed her passengers, abandoned them to their fate, and, having relieved the pilot-boat from the ice, and taken a pilot to point out the location of the bark, proceeded to the bark. She arrived along-side at about 11 o'clock at night, and was requested to lie by till morning, and then take hold with the Baltic, and endeavor to get the bark off, upon the understanding that she should have nothing unless successful, and if successful the reward should be determined by arbitration on shore. Later it was determined that the matter should be left to the court instead of to arbitration.

At daybreak, and as soon as the bark began to feel the rising tide, both tugs took hold of her, and towed her off the shoal, and she was taken by the Haviland to Pierrepont Stores, Brooklyn, where she arrived in safety at about breakfast time.

The value of the Cassandra Adams and her cargo was $200,000. The value of the Haviland was $26,000. The only question in dispute is as to the extent of the peril to which the Cassandra Adams was exposed. The claimants contend that, without the aid of the Haviland, the bark would certainly have been relieved, if not by the Baltic, by some other tug; and having paid $300 to the pilot, and $800 to the Baltic, they consider $1,500 to be a sufficient sum for them to pay the Haviland. On the other hand, the libelants contend that the Baltic, unassisted, could not have relieved the bark; that no other tug was in sight on Saturday morning; that the worst storm of the winter was then brewing, which on Saturday night burst furiously, and would surely have destroyed the bark had she remained on the shoal; wherefore they say the reward should be as for saving the bark from certain destruction.

Upon the evidence, it is hard to say that the Baltic unassisted would have been able to relieve the bark. It is evident that the master doubted her ability, for, although the Baltic was present, he gladly engaged the services of the Haviland. It is also impossible to say that the rescue of the bark by some other tug was certain. Time, it is to be remembered, was of the greatest importance on this occasion. The bark could only be moved at high water. On Saturday morning the Baltic and the Haviland

were the only tugs in sight, and a refusal of assistance by the Haviland would, in the event of a failure by the Baltic,—a result contemplated as possible, for she agreed for $500 in case of failure,—have been followed by the total loss of the bark and her cargo, unless she should be got off at the next high tide. After that the storm was too furious to permit of any effort to relieve her. The next high tide was at 7 o'clock Saturday evening. During Saturday a fresh breeze blew, which increased as the day wore on. When the tide rose it was such, I judge, as would have rendered the attempt to get the bark off on that tide a serious undertaking for any tug. That the condition of the bark would have been known in New York on Saturday morning, and that some of the numerous tugs always available in New York harbor would have gone to her aid on Saturday, I do not doubt. But, loaded as the bark was, no tug would have attempted to move her until high tide, and, as the wind was at the next tide, moving her then would have involved great exertion, and, as it seems to me, would have been attended with some risk of total failure. Certainly her rescue by a salvor at that time would have subjected her to a liability for salvage exceeding in amount the sum now claimed by the Haviland.

I am unable, therefore, to agree with the claimants in their contention that, without the aid of the Haviland, the bark was sure of being hauled off by some other tug. I agree, however, that some chance of being hauled off by another tug was open to the bark. This circumstance is to be considered in determining the value of the services rendered.

It is also to be considered that the tug was put to no risk whatever, nor was she called on to display extraordinary skill, or put forth unusual exertion, and she was occupied but a few hours; so that, although the value of the property saved was considerable, and the damage to which it was exposed was serious, the tug can be largely rewarded for the time expended without making the charge burdensome to the bark.

In view of all the circumstances, I think $3,500 will be a proper salvage reward, and for that sum with costs let a decree be entered.

[1] Reported by Edward G. Benedict, Esq., of the New York bar.